# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00068-CR

**Raul Israel Cruz, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 64751, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Raul Israel Cruz of the felony offense of driving while intoxicated, subsequent offense. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(b) (West 2011). Punishment was assessed at ten years' imprisonment and a $5,000 fine, but imposition of the sentence was suspended and Cruz was placed on community supervision for ten years. In two issues on appeal, Cruz asserts that the evidence is insufficient to sustain his conviction. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that on December 21, 2008, at approximately 1:36 a.m., Deputy Jackie Howell of the Bell County Sheriff's Office, while on patrol, came across a pickup truck in a bar ditch between the curb and the fence line near the intersection of Patty Hamilton Road and the service road at US 190 West. Howell testified that he could see a driver inside the truck and

the truck "rock every now and then." As Howell got closer to the vehicle, he observed "a gentleman trying to drive the truck, but it wouldn't move. It was just spinning." Howell added that the driver was the only occupant in the truck and that there was "a jack under the left rear wheel" that "looked like it had been pushed over."

Howell got out of his patrol car and made contact with the driver, later identified as Cruz. Howell testified that as he approached, Cruz was still in the driver's seat, the engine was running, and the headlights were on. When Howell knocked on the door, Cruz turned off the engine and got out of the truck. As Howell conversed with Cruz, Howell observed that Cruz's "voice was slurred" and "he was kind of staring." Howell "could smell alcohol on his breath" and noted that Cruz would "occasionally . . . ease back and put his hands against the vehicle behind him" for what Howell perceived to be "support." Howell then contacted dispatch, reported an accident, and waited for DPS to arrive.

On cross-examination, Howell was asked how he knew that Cruz was operating the vehicle if he did not look in the vehicle and actually see the key in the ignition. Howell testified that when he first approached the vehicle, the engine was running and he observed one of the rear wheels "turning" and "rocking (indicating) forward and backwards." When asked if the vehicle was "un-drivable," Howell answered, "I would say that where he was it couldn't go anywhere." Asked again whether the car was "drivable," Howell testified, "No, because it was . . . stuck or wouldn't pull or something. But the wheels were turning, but he wasn't going anywhere."

DPS Trooper Arthur Noell responded to the dispatch and arrived at the scene at approximately 1:53 a.m. Noell testified that he observed a pickup truck in the bar ditch and found no evidence that, if there had been an accident, other vehicles had been involved. During his

investigation of the apparent accident, Noell observed skid marks on the road and in the ditch and surmised that Cruz had "skidded across the intersection through the bar ditch, out towards the railroad tracks, and back to where [Noell] found the vehicle disabled." Noell also observed that two of the vehicle's tires were flat. However, Noell testified that "the skid marks did not indicate a tire had blown out." Based on the location of the skid marks, Noell also concluded that Cruz might have disregarded a nearby stop sign.

Noell made contact with Cruz and asked him to exit the vehicle. Noell recalled, "Immediately upon his exit, I detected the presence of alcoholic beverage . . . [b]y smell." Noell also noticed that Cruz had "slurred speech" and "seemed to be a little unsteady on his feet. Staggered a little bit." Noell proceeded to ask Cruz questions about what had happened. From this conversation, Noell learned that Cruz "was coming from a bar, and that he was going to Killeen." Noell testified that if Cruz was going to Killeen, it appeared that he had been "traveling in the wrong direction." Noell also asked Cruz whether or not he had been drinking. According to Noell, Cruz "stated he had six beers."

Noell next attempted to administer the standardized field sobriety tests to Cruz. However, Noell testified that Cruz could not move his eyes as directed during the HGN test, was unable to "maintain start position" during the walk-and-turn test, and informed Noell that he could not perform the one-leg-stand test. As a result, these tests were not completed. Noell then asked Cruz to recite the alphabet. According to Noell, the first time Cruz attempted to do so, "he messed up pretty bad." The second time, however, Cruz was able to complete the alphabet. Based on everything he had observed, Noell concluded that Cruz was intoxicated and placed him under arrest.

3

Noell transported Cruz to the city jail in Killeen. Once there, Noell again attempted to administer sobriety tests to Cruz. Noell testified that on the one-leg-stand test, Cruz lost his balance, put his foot down, and was unable to comply with Noell's directions. On the finger-to-nose test, on at least four attempts, Cruz failed to touch his nose with his index finger as directed. On the walk-and-turn test, Cruz "initially [] couldn't maintain his balance in his start position," "stepped off the line," "missed heel-to-toe steps five through nine," "used his arms to balance" rather than "keep them to his side as he was asked to do," and "on the return nine-step, [] missed all nine steps heel to toe."

Noell also interviewed Cruz at the jail. The questions that were asked during this interview and the answers that Cruz provided were written on a form that was admitted into evidence. During the interview, Cruz was asked whether he was "operating a motor vehicle" and whether he was "intoxicated." To each of these questions, Cruz answered, "Yes." Cruz also answered that his "destination" was "home" and that he had "started from" a bar. Cruz further admitted to drinking six beers, beginning at 6:00 p.m. that night. When asked about the time of his last drink, Cruz did not know. Shortly after the interview, two breath samples were taken from Cruz. According to the evidence presented, one breath sample showed that Cruz had a blood-alcohol concentration of .151; the other sample showed a blood-alcohol concentration of .149. The legal limit is .08. *See* Tex. Penal Code Ann. § 49.01(2)(B) (West 2011).

Cruz stipulated to two prior DWI convictions, and the jury found him guilty as charged. The jury assessed punishment at ten years' imprisonment but recommended that Cruz be placed on community supervision. The district court suspended imposition of the sentence in accordance with the jury's verdict. This appeal followed.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence to support a conviction, we view all evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318. The reviewing court may impinge on the trier of fact's discretion only to the extent necessary to guarantee the fundamental protection of due process of law. *Id*. at 319.

## ANALYSIS

In his first issue, Cruz asserts that the evidence is legally insufficient to sustain his conviction because "there was no circumstantial evidence to show [a] temporal connection between [Cruz's] driving and any alleged intoxication." The State responds that the requisite connection is proven by the totality of the circumstances in this case.

"[I]n order for the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between a defendant's intoxication and his driving." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). In other words, there must be some evidence showing a temporal connection between the time of the defendant's drinking and the time of his driving. *See Stoutner v. State*, 36 S.W.3d 716, 721 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Weaver v. State*, 721 S.W.2d 495, 499 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). However, "a conviction can be supported solely by circumstantial evidence." *Kuciemba*,

310 S.W.3d at 462. "Being intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident." *Id*.

In *Kuciemba v. State*, the case on which Cruz relies, a deputy responded to a one-vehicle rollover accident. Upon arriving at the scene, the deputy observed a pickup truck "resting upright in a ditch with its roof crushed." *See* No. 14-08-00050-CR, 2009 Tex. App. LEXIS 1728, *1-3 (Tex. App.—Houston [14th Dist.] 2009) (mem. op., not designated for publication), *rev'd*, 310 S.W.3d 460 (Tex. Crim. App. 2010). The deputy also observed the driver, who was the only occupant of the vehicle, slide across the center console into the passenger seat and exit the vehicle. The driver, later identified as Kuciemba, approached the deputy, and the deputy observed signs of intoxication, including trouble standing, a strong smell of alcohol on his breath, slurred speech, and glassy and bloodshot eyes. A paramedic who had arrived at the scene and treated Kuciemba also smelled alcohol and observed that Kuciemba was "a little unsteady on his feet." Because Kuciemba was bleeding and complaining of chest pain, the paramedic drew Kuciemba's blood so that hospital personnel could determine whether he had sustained a cardiac injury. The blood was later tested for alcohol, and the test revealed a blood-alcohol content of .214.

The intermediate court of appeals found the above evidence insufficient to prove that Kuciemba was intoxicated at the time he was driving. *See id*. at *7-9. However, on discretionary review, the court of criminal appeals disagreed. The court found that the jury could credit circumstantial evidence tending to show that Kuciemba was intoxicated at the scene of the accident, and observed that "the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Kuciemba*, 310 S.W.3d at 462. Other evidence that supported an inference of driving while intoxicated, according to the court, included the driver's

6

apparent failure to brake prior to the rollover, his presence behind the steering wheel, the fact that he was still bleeding when he was treated, and the driver's high blood-alcohol level at the scene. *Id.* at 463. "The combination of these facts," the court concluded, "is sufficient to support appellant's conviction for driving while intoxicated." *Id.*

Similar facts exist in this case. When Deputy Howell arrived at the scene, Cruz, the only occupant in the vehicle, was in the driver's seat of the truck, the engine was running, at least one wheel was spinning, and the headlights were on. Cruz appeared to have been in what the jury could reasonably infer was a one-car accident, as skid marks were present on the road, the truck was found in a ditch, and two of the truck's tires were flat. Cruz contends that the circumstances of the accident could just as easily be explained by a sober driver losing control of his vehicle, but it would not have been unreasonable for the jury to reach the opposite conclusion. The jury also could have reasonably inferred that Cruz was intoxicated at the scene of the accident, as both Howell and Noell observed several signs of intoxication, including the smell of alcohol, slurred speech, unsteadiness, and Cruz's inability to perform field sobriety tests. Additionally, although no breath or blood samples were taken at the scene, the breath samples taken after Cruz had arrived at the jail showed his blood-alcohol level to be above the legal limit. The jury could have reasonably inferred from this evidence that Cruz had a similar blood-alcohol level at the scene and while he was driving. Also, in his interview at the jail, Cruz admitted that he had been operating a vehicle, going home from a bar, and had drank six beers on the night of the accident. Viewing the above evidence in the light most favorable to the verdict, we conclude that the totality of the circumstances supports the jury's finding that Cruz had been driving while intoxicated.

We overrule Cruz's first issue.

In his second issue, Cruz claims that the evidence is legally insufficient to sustain his conviction because the motor vehicle was "inoperable" at the time of the alleged offense. The State responds that in this case, again considering the totality of the circumstances, "the evidence clearly shows that [Cruz] was operating the vehicle when he was observed by Deputy Howell."

A person commits the offense of driving while intoxicated if the person is intoxicated while "operating" a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). There is no statutory definition of "operate." However, the Dallas Court of Appeals has held that "the plain meaning of the word requires 'effort, the doing of something by the operator.'" *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.). The court went on to reject "the contention that to operate a vehicle within the meaning of the statute, the driver's personal effort must cause the automobile to either move or not move." *Id*. The court explained,

> Purposely causing or restraining actual movement is not the only definition of 'operating' a motor vehicle. In other words, we examine the totality of the circumstances to determine if appellant exerted personal effort upon his vehicle in a manner that shows intentional use of the vehicle for its intended purpose. We hold that the evidence is sufficient to show operation of a motor vehicle where the totality of the circumstances demonstrates that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.

*Id*. This definition of "operate" has been subsequently adopted by other courts in Texas, including this one and the court of criminal appeals. *See, e.g.*, *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *Edwards v. State*, No. 03-02-00373-CR, 2003 Tex. App. LEXIS 8496, *4 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op.).

In this case, Cruz was found behind the wheel of the truck with the engine running, the tires spinning, and the headlights on. Although Cruz contends that "spinning the wheels of the

truck, while jacked up, does not show that [Cruz's] action would have enabled the vehicle's use," the jury could have reasonably found otherwise. The vehicle was not necessarily "jacked up." As Howell testified, the jack was under the wheel, but it "looked like it had been pushed over." As for the flat tires, the jury could have reasonably inferred that they would not necessarily prevent Cruz from enabling the vehicle's use, especially since two other tires were not flat. The jury also could have chosen to not credit Howell's testimony that the car was not "drivable," particularly in light of the fact that the engine was running when Howell first approached the vehicle. Viewing the evidence in the light most favorable to the verdict, we conclude that the totality of the circumstances supports the jury's finding that Cruz took action to enable the vehicle's use.

We overrule Cruz's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____
Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: August 11, 2011

Do Not Publish